## TEAGUE et al. v. FARMERS' STATE BANK OF CENTER.

### No. 2303.

Court of Civil Appeals of Texas. Beaumont.

Dec. 22, 1932.

Rehearing Denied Dec. 28, 1932.

Anderson & Lewis, of Center, for appellants.

Sanders & McLeroy, of Center, for appellee.

LAWHON, J.

Appellee brought suit in the county court of Shelby county against W. E. Teague, Louis Teague, J. E. Watson, and J. R. Thomason. Recovery was sought on a promissory note in the principal sum of $440, together with interest and 10 per cent. attorney's fees.

No answer was filed by W. E. Teague and Louis Teague, and judgment by default was taken against them. J. E. Watson and J. R. Thomason alleged that they were induced to sign the note upon representations and promises made them by officers of the bank that they would not be held liable, as the bank held a chattel mortgage on two trucks belonging to W. E. Teague, and that this was ample security for the debt, and that the only reason that their signatures were wanted was to satisfy the commissioner of banking and his assistants. It was further alleged that appellee had willfully and negligently failed and refused to foreclose on the personal property, but allowed it to be taken and appropriated by other parties. A trial was had before the court, and a joint and several judgment was rendered against W. E. Teague, Louis Teague, J. E. Watson, and J. R. Thomason, but judgment in favor of Watson and Thomason was given against W. E. Teague for any amount they might be compelled to pay. W. E. and Louis Teague have not appealed from the judgment.

The record discloses that the note sued upon was a renewal of a former note. The first note was signed by W. E. Teague, J. E. Watson, and J. R. Thomason. Louis Teague did not sign this note. W. E. Teague gave a chattel mortgage to secure this note on two trucks. The evidence showed that there were prior chattel mortgages against both trucks to secure part of the purchase price of same. When the note was renewed, the bank requested that Louis Teague sign it also, and it was signed by the other parties, as before. W. E. Teague received from the bank the amount of the first note, and Watson and Thomason received no benefit therefrom. The evidence shows that, before the execution of the renewal note, the two trucks had been turned over to the holders of the first liens, and that the value of the property was not equal to the debts against them. It was further shown that the officers of the bank did not know about this when the renewal note, which was sued upon, was taken. The court found that at least one of the appellants knew that the property had been turned over to the prior lienholders, and that there was no security for the second note.

J. E. Watson, one of the appellants, testified that Mr. Smith Sanders, the acting vice president and executive head of the Farmers' State Bank, came to his place of business and talked to him about signing the first note and also about getting Mr. Thomason to sign it. He swore that Mr. Sanders stated that he had taken a mortgage on W. E. Teague's trucks, and that the bank was fully secured under its mortgage, and that he only wanted his signature and the signature of Mr. Thomason in order to get by the rules of the banking commissioner and to get by the bank examiners; that Mr. Sanders would see that neither he nor Mr. Thomason would ever be bothered about the note or called upon to pay the same, and upon these representations he signed the note. The appellant Thomason did not claim to have had any conversation with any officer of the bank, but that appellant Watson told him the facts as substantially testified to by him. R. S. Sanders, the vice president of the bank, denied having made any such statements to either Watson or Thomason; that he did not recall ever having a conversation with Watson. He stated that he did recall having a conversation with Mr. Thomason, and that Mr. Thomason told him that he would sign the note. The matter does not seem to have been discussed by any one at the time the second note was signed.

▉ Appellants contend that the judgment against them is erroneous because the preponderance of the testimony shows that they executed the note solely for the purpose of accommodating appellee bank, and therefore no recovery could be had against them. Article 5933, § 24, R. C. S., provides that every negotiable instrument is deemed to have been issued for a valuable consideration. The burden was upon appellants to prove their defenses by a preponderance of the testimony. Hamilton-Turner Grocery Co. v. Hander (Tex. Com. App.) 299 S. W. 848. As to whether the vice president of the bank made the representations claimed by appellants was a question of fact, and the court, in this case, was the exclusive judge of this question. Central National Bank v. Lawson (Tex. Com. App.) 27 S.W.(2d) 125. The preponderance of the testimony does not depend upon the number of the witnesses for or against an issue. The vice president of the bank denied making the representations, and the trial judge believed his testimony. His findings are conclusive on this court.

▉ Appellants further say that, as the bank held a mortgage on the two trucks, it became its duty to foreclose, and its failure to do this released appellants. There is no proof that appellants ever requested that any action be taken against this property, but it is shown without dispute that the maker of the note returned the property, without the knowledge of the bank, to the first lienholders, and that the property was not sufficient to pay these debts. Even if the value of the property had been more than sufficient to pay the first liens, the failure of the bank to enforce the mort-

gage it held would not have relieved appellants of their liability on the note. Ramsey v. Wahl et al. (Com. Tex. App.) 235 S. W. 838.

We find no error in the judgment of the trial court, and it is affirmed.